Dear Mr. Finalet:
Your request for an opinion of the Attorney General on behalf of the Louisiana Board of Pharmacy as their legal counsel has been assigned to me for consideration. Your question, as I understand it, is in regard to a proposed regulation by the Board regarding Collaborative Pharmacy Practice with the Louisiana Board of Medical Examiners. That regulation, 46 LII 909, provides as follows:
 Pharmacy Collaborative practice is that practice whereby a pharmacist has agreed to work in conjunction with one or more licensed physicians under written protocol. Any collaborative practice protocol shall adhere to established guidelines which have been approved by the Louisiana State Board of Medical Examiners and the Louisiana Board of Pharmacy.
In connection with this proposed regulation you ask the following:
 1. May the Board adopt the proposed regulation, LAC 46:LIII.909, regarding the desired Collaborative Pharmacy Practice agreement with the Louisiana Board of Medical Examiners; and
 2. If the answer to question #1 is affirmative, must the guidelines approved pursuant to the proposed regulation be adopted as regulations of the Board or may they remain as guidelines due to the flexible nature of the proposed agreement involved.
In connection with the second question, you indicate the guidelines to be developed pursuant to the regulations "will require quite a bit of trial and practice in order to determine what works and is practical for both boards", and accordingly, it is felt these guidelines must be flexible until a solid base is developed on which to build.
We can find no reason to conclude the Board of Pharmacy cannot adopt the proposed regulation wherein it permits a pharmacist "to work in conjunction with one or more physicians under written protocol", but the further provision that the protocol "shalladhere to established guidelines which have been approved by the Louisiana State Board of Medical Examiners and the Louisiana Board of Pharmacy" presents a complex question that cannot be answered without specificity as to the contents of the guidelines.
As you point out the collaborative agreement authorizes a pharmacist to exercise duties pursuant to specific written directions by the physician, but it appears the significant question will be what is provided by the protocol guideline for therein the question of legality will arise. You point out that establishing the guidelines may require a type of trial and error which we can readily understand for we find there are limits upon that which a physician can legally direct a pharmacist to do, and to determine these limits cannot be easily defined. However, we feel the guidelines cannot permit a physician to direct a pharmacist to perform an act that exceeds the statutory duties conferred upon a pharmacist unless there is amendment to our law.
As an example, we note that R.S. 32:664, which is in regard to a blood test requested by a law enforcement officer in connection with a belief that an motorist is under the influence of alcohol or drugs, specifies "only a physician, registered nurse, qualified technician or chemist may withdraw blood for determining alcohol content or presence of any abused or illegal controlled dangerous substance therein." While a pharmacist may be equally qualified, we do not think the statute would permit the designation by the physician to the pharmacist to act in his place considering these restrictive designations in the statute.
Moreover, we find R.S. 37:1222, "Definition of `practice of pharmacy'", provides, "The term `practice of pharmacy' or `practice of the profession of pharmacy' means and includes the compounding, filling, dispensing, exchanging, giving, offering for sale, or selling, drugs, medicines, or poisons, pursuant to prescriptions or orders of physicians, dentists, veterinarians, or other licensed practitioners, or any other act, service operation or transaction incidental to or forming a part of any of the foregoing acts, requiring, involving or employing the science or art of any branch of the pharmaceutical profession, study or training." Consequently, we would conclude the written protocol could not prescribe an act outside this definition which basically specifies that pharmacists deal with filling and dispensing drugs pursuant to prescriptions. However, it further includes "transaction incidental to or forming a part of any of the foregoing acts * * * employing the science or art of any branch of pharmaceutical profession, study or training". We are not in a position to state what this may entail and would have to be determined in the guidelines.
Although you indicate several other states have similar agreements, and have successfully implemented their guidelines, our nationwide research has been unsuccessful in finding any litigation on the issue of the validity of the collaborative agreement between a state's Pharmacy Board and Board of Medical Examiners.
Under R.S. 37:1178, "Powers and duties of the Board", and R.S.37:1223, "Rules and regulations", the Board of Pharmacy is authorized to promulgate rules and regulations to carry out the purposes of the Board as set forth in the Chapter and Code of Ethics, and it would appear that it would be sufficient to enact a resolution authorizing the development of the guidelines in furtherance of the collaborative agreement without the guidelines each being by resolution.
We realize this opinion leaves a significant question unanswered, but do not feel a blanket answer may be given as to the validity of a collaborative agreement without perimeters having been established by the guidelines for the collaborative practice.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR